Our third case for argument today is United States v. Stewart. Mr. Roy. Thank you, Judge. Good morning. May it please the court opposing counsel. My name is Michael Roy on behalf of appellant Daniel Stewart. This court should vacate Mr. Stewart's sentence for three reasons. I'll just jump right into it unless the court has a specific issue they want me to address first. So starting with the career offender enhancement. I know there's a lot in the briefs that are disagreement about the standard of review. I think the briefs cover that pretty thoroughly. So I think I just want to say our position is plain error, whether it's forfeit or not, doesn't really matter. We're already facing Stinson. We recognize that's a pretty steep standard. I think if we meet Stinson, we're necessarily meeting plain error. So I just want to jump straight to the merits. Like I said, I understand Stinson is a steep standard to meet. But I think that reading the text itself, there's only one conclusion to draw, which is that subsections B and C were meant to be applied in the alternative. The contextual source for our argument is primarily the phrase at the beginning of subsection B that says, except as provided in subsection C. That's often used to flag that different provisions work the alternative. We think that that position is further reinforced by the repeated use of the phrase otherwise applicable. The first time otherwise applicable is used in subsection B. I think there's no dispute it's referring to a non-career offender enhanced range. Has any court of appeals adopted your reading of section 4.1, 4B, 1.1B? Thank you, Judge. It's a tongue twister. Yeah, I'm trying to avoid the tongue twisters here. No, no court, as far as we could find, has even addressed this argument. Okay. Which in terms of whether it be in plain error or not, we think that kind of helps us in that we're not asking for a circuit split. We're not trying to differentiate any other authority. The argument is the same whether it's preserved or not. As far as I can tell, the first time this is being argued. That being said, I do still think the text supports our position. As well as the actual phrases in it, the fact that the charts at C3 in subsection B that they're designed to meet the same outcomes, I think is helping to reinforce that when the Sentencing Commission created subsection C, they were just trying to create a simple way to come to the same conclusion. We know 924C, it goes from five to life, but it's often treated as sort of a strange, different provision. I mean, this court sees many cases with 924C convictions, and it's almost rote for many sentencing judges to say plus five for the 924C. So the Sentencing Commission wanted to make clear, no, treat this as if it is a maximum life, which it is. And then this is the ranges you would get applying the regular career offender rules. The government's objections rely mainly on policy concerns. Obviously, policy can't overcome textual analysis. I'm happy to address any of the government's policy arguments. But unless this court has questions about that, we would rest on our textual analysis, and I would move on to the other claims. In terms of our second claim, based off of the Supreme Court's decision in Pepper, the government, I think, misconstrues our claim. We're not arguing that district courts are required to reward rehabilitation. We're not arguing that there's any sort of categorical bar against considering any information that's sentencing, or at least nothing that was at issue in this case. We're not arguing that the court somehow created a disparity or that there's like a forbidden factor analysis. It's very simple. We think the court just did not understand that it had discretion to consider the rehabilitation as much as it wanted. This is, I think, similar to Castaneda, where there was kind of a muddled record. The district court was not entirely clear whether it understood that it had discretion or the extent of its discretion to go below a mandatory minimum when the safety valve applied. What do you do about the – there's a – I think you argue about this in your brief. There's a passage in the sentencing transcript, right, Mr. Roy, where the district court judge says, I just don't think it would be fair to award a drastic variance because that would all but overlook the underlying offense conduct. And the sentences that attach to offense conduct like this see all the other people that are doing time on charges like this. Isn't that just an exercise of discretion not to vary more downward or to grant a more reduced sentence? I think that sentence in isolation, yes, that would be an exercise in discretion. But, I mean, transcripts aren't statutes. You have to read them in context, right? And it's the paragraph as a whole that wraps around 51 to 52 of the appendix where it's – this is the section where I'm talking about the 3553A6 factor. The court doesn't cite the statute, but that's clearly the statute the court's talking about unwarranted disparities. It says, okay, I'm marching through the factors. I'm going to address unwarranted disparities. What I think unwarranted disparities means is that I have to limit how much I reward you for your post-sentencing rehabilitation. And that's just wrong. Post-sentencing rehabilitation or aggravating facts post-sentencing for that matter too, they simply do not have anything to do with A6. It's nothing – that's not a disparity thing. The court misunderstood that it could have varied as much as it wanted to. I mean, it didn't have to, of course, but it could have as much as it wanted to, and A6 had nothing to say about that. That's the holding of Pepper. Lastly, our third claim about the laundering counts that the court doubled on resentencing. I want to distinguish that there's really two issues here. The first is whether there was an error at all, and the second being whether concurrent sentence doctrine applies. We knew from the outset concurrent sentencing was going to be an issue with this claim, but assuming we went on the merits, I think we have laid out our arguments for why this court should not exercise this discretion to use the concurrent sentencing doctrine. First of all, concurrent sentencing doctrine is discretionary. It's not something this court has to do. It's not a jurisdictional issue. As we point out, the Ninth Circuit has essentially abolished the doctrine altogether. And we're sort of in a weird place right now where there is actually headwinds towards clemency for drug offenders. There was a lot of political will building up to the current administration, and now there's a specific pardon czar appointed. Her role is not entirely clear yet, but it seems to be that there is going to be some sort of program based specifically on drug offenders. Money laundering is a different kind of fish than drug offenders. This doesn't fall into the same sort of policy arguments about mandatory minimums for nonviolent drug offenders like Mr. Stewart. Sorry, Judge Brennan, it looked like you had a question. I'm good, thank you. As for the merits itself, the government is saying he's not entitled to an explanation. I would disagree. I think an explanation is almost exactly the description of what due process means. Of course, the court doesn't have to march through checklist fashion, doesn't always have to go through each individual count, but I think Wiltshire is a good analogy here. In most cases, the mine run cases, a district judge does not have to give a separate explanation for the length of supervised release versus the length of prison because it's implied. Anyone reviewing the transcript understands. Wiltshire was a weird example where the court's explanation for the prison sentence could not have applied to the supervising release because they were focused on punishment, which isn't something. I mean, there's technical reasons, but you couldn't look at the transcript and see the implied reasoning. We have the same thing here. There was no new aggravating information at resentencing, only mitigating information at sentencing. Nothing else got raised. It's hard to speculate why the court raised the money laundering counts, but it seems most likely it was just a mistake by the court. And I'll reserve the rest of my time for rebuttal unless there's specific questions. Certainly. Mr. Roy? Mr. Clark? Thank you, Mr. Roy. Colin Clark on behalf of the United States. I'd like to start with something that applies in plain error review but not in Stinson review, the issue of novelty. Novelty, like an issue that is unsettled, is not normally reviewable in plain error. In both the reply brief and in the page dissent, the case of United States v. Ruth gets mentioned as an example. And so I tried to figure out if the issue was even argued there. I pulled up the United States brief from 2020, and this sentence is included, and it quotes a case by this court in United States v. Ramirez. The line reads, this court rarely finds plain error on a matter of first impression. And I'm happy to provide a 28-J letter on Ramirez because it was not cited in the briefs. But the point is that this court has long held that when the law is unsettled, we don't normally reach new issues unless the issue is so obvious that plain error review is warranted. And so my opponent has come up here and said, not only is plain error review in Stinson the same, this is the first time anywhere anyone has ever heard of this claim. That makes this case an excellent vehicle to deny that claim as a matter of plain error review because the issue is novel. Moving beyond the standard of review, what's your best textual argument that the relevant application note doesn't conflict with the guidelines? The application note contains a definition. How can a definition conflict with a guideline? Unless, say, the sentencing guideline – I'm sorry, the sentencing commission said – defined a term, say, we're going to define a horse as a chicken. That perhaps could be a definitional conflict. But what they said is that an otherwise applicable guideline range, which is a phrase that's only used in this one part of the guideline, means that you take the mandatory minimum from the 924C count and then you apply the table in subsection B and you add the minimums to the numbers in the table. And it's just that simple. There's no conflict at all. I honestly fail to see my opponent's point on this, how there is a conflict. It's simply a definition to a term used in the guideline. That would be my best argument. And so I think it's also helpful to note, although not as an issue of plain error, but simply on the merits, that this guideline has been applied without any argument for 25 years almost. And so it would simply be that we've all missed it for decades. And that kind of perhaps suggests that there isn't a problem at all. And also the sentencing commission, the same one that wrote this guideline and the applicable part has not been amended, also included the commentary, the definitional phrase. If you look at the language that they proposed initially in November of 2001, the United States raised an objection suggesting that the proposed language would raise an anomaly where certain offenders would actually get a sentencing credit by becoming a career offender. And therefore, they changed the language and included a definition that was eventually proposed to Congress. That's, I believe, in footnote three at least, contains the citations to the public comments and the original proposal. And what I found in further research, because obviously my hypothetical contained an error, I missed the trailing asterisk. And so I agree with my counsel that the two, Boudreau and Thibodeau, would have the same sentencing guideline in the end. But the point is that for issues of, say, at the time, 924C stacking, there could be an issue where, at least in the sentencing commission's initially proposed guideline commentary, I'm sorry, guideline, that two 924Cs would actually benefit from being a career offender, which would be absurd. And that's why it was changed to its present form. Unless there are more questions, I'm going to move on to the Pepper claim. This is kind of an unusual issue because both sides are claiming that we are for greater discretion for the district court to consider issues. And again, I kind of failed to see my opponent's point. As Judge Scudder, as you pointed out, the key issue is whether the district court thought it would be fair that this person standing in front of him would get a drastic variance because of post-sentencing rehabilitation when many, many other offenders don't get that. That is an exercise, as you said, in discretion. And although the Pepper court talks about…the Pepper court presented just a completely different issue. It dealt with whether we could eliminate that issue altogether, and you could eliminate post-sentencing rehabilitation as a disparity in two ways. You could either have constant resentencings where everybody would get resentenced all the time to evaluate how they've been doing in prison, or no one ever gets to talk about post-sentencing rehabilitation. The Pepper court said, look, this categorical rule makes no sense, and it's not a correct application of 3553A6. And so that's why they used in that line my opponent relies on so frequently that Congress didn't seek to eliminate the disparity. That has no bearing on whether a district court can seek to reduce the disparity by saying, look, I'm going to consider your post-sentencing conduct, but I'm not going to give you a drastic variance because it's a disparity that I'm seeking to reduce. He didn't eliminate it. If he did eliminate the disparity, he would have said, I'm never going to consider your post-sentencing rehabilitation. I think what the district court was saying is that there's no question you have exhibited positive rehabilitation. You're doing some good things in prison. I'm going to reward you for that, but I'm not going to reward you by saying you're released this afternoon. There's kind of a limit to it. And the limit is you committed some very, very serious offense conduct, and you got a tough record. And that offense conduct lands people in jail oftentimes for the rest of their life. And so all he did was temper the exercise, the kind of limit, the exercise of his discretion. And I agree with all of that, and I don't understand what was he supposed to have considered? Because my opponent's argument is that his sentencing discretion was limited in some way. He did consider, and he chose not to give it. Look, Mr. Roy is doing a very good job for a client in a tough spot. And the argument he's making is, well, hold on, where the district court went wrong was in referencing the other offenders, meaning the ones that didn't have an opportunity for resentencing. And he's asking us on Mr. Stewart's part to say, look, you really can't do that. Focus on the person in front of you. Don't focus on all these other people. And if that is his argument, then he is saying that considering other offenders not before the court who are in a similar position is a prohibited factor. I fail to see the conceptual difference. I think that's what he's arguing. So we have to decide whether he's right or not. His reply expressly disowned that argument. I don't know about that. But maybe I'm sure he will tell you whether I'm wrong or not. But I think regardless of what his argument is, it is not a prohibited factor. I think the best place to go is conception, where in the footnote they say, look, it is a feature, not a bug, to consider that sentencers will consider disparities differently. In that precise case, there were offenders who would have been able to get the benefit of a non-retroactive career offender guideline where others wouldn't. And the court says, yes, of course, because they're in front of the court, they can consider that despite the fact that there is a disparity. And those disparities can be handled differently. What Justice Kavanaugh called the haphazard windfall scenario is very similar to maybe what Justice Stewart would call being struck by lightning in Furman v. Georgia. The fact that some offenders get what, in the sentencer's view, special treatment for having a rare opportunity for extra punishment or extra leniency is something that is fairly taken into account. And all we're saying is that it's fairly taken into account. The last argument as to the first issue, I don't see how JET doesn't apply on all fours on this case. Again, I don't really see my opponent's argument on that. And as to whether it would always be the case that reducing a person's sentence might help them in some sort of quest to get a pardon or commutation, but that would eviscerate concurrent sentencing doctrine. The argument he made failed in Dean, United States v. Dean, which is what JET relies on, and he's re-urging it here, and it's just a foreclosed issue. If there are no further questions, thank you for the court's time. Thank you, Mr. Clark. Anything further, Mr. Romero? I just want to turn back to the ASICS issue. I wouldn't quite put our argument as we're saying prohibited factor. Courts can never consider other defendants sentencing. The district court in this case didn't even consider other defendants' sentences, except in the abstract sense that other defendants exist. Of course, courts can consider other defendants in appropriate contexts. Reyes-Hernandez, the case the government cites as an example when they're comparing Fast Track. Another example would be, say he got a lower sentence because he got resentenced, was on supervision, immediately screwed up, revocation proceeding. The judge throws the book at him saying, look at this amazing opportunity you got that most people don't to get out early. That would be a totally appropriate consideration. The problem here was that the judge misinterpreted a direction from Congress. The judge essentially said, Congress directed me to limit my consideration of the rehabilitation material. And Congress didn't do that. That's the legal error. And it is a unique case in that this is pretty exceptional rehabilitation material. And he had 13 letters in support. The courtroom was full of supporters. Even when he was in a life sentence, he was doing everything right, which usually there's not as much of a motivation to perform or behave well in prison if you're there for life. But he did it. He was doing charity work, everything. He was a kind of an expert. Unless there's further questions. Thank you, Mr. Morgan. The case is taken under advisement.